UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KIA MATTHEWS,<br><br>   Plaintiff,<br><br>  v.<br><br>CALUMET COLLEGE OF ST. JOSEPH, INC.,<br><br>   Defendant. | CAUSE NO.: 2:19-CV-245-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 25], which is fully briefed and ripe for ruling. The Plaintiff Kia Matthews brings a claim against Calumet College of St. Joseph, Inc. under the Equal Pay Act, alleging that she was paid less as the Assistant Women's Basketball Coach than the man who was the Assistant Men's Basketball Coach for the 2016–2017 academic year. Because the Plaintiff has demonstrated a genuine dispute of fact for trial, the Court denies the motion.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no

issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**MOTIONS TO STRIKE**

Federal Rule of Civil Procedure 56 provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

A.      **The Plaintiff's Motion to Strike**

The Plaintiff's Motion to Strike Defendant's Exhibit C [ECF No. 29] asks the Court to strike portions of the declaration of Sharon McGuire, the Defendant's Director of Human Resources. First, the Plaintiff argues that paragraphs 7 and 8 are hearsay because they describe a conversation that McGuire had with the Head Women's Basketball Coach regarding the Plaintiff's compensation. Although the first sentence of paragraph 7 contains hearsay, the

Defendant does not rely on the sentence in its briefs. The remainder of paragraph 7 and paragraph 8 are within McGuire's personal knowledge and are not hearsay.

Second, the Plaintiff argues that Paragraphs 6, 11, and 13 contain statements that are hearsay or that are not based on personal knowledge. The Defendant does not rely on paragraph 6. As to paragraphs 11 and 13, the Plaintiff objects to McGuire stating the reason that the Head Men's Basketball Coach hired Christopher Artis as the sole Assistant Men's Basketball Coach, arguing that McGuire could only have learned that from the head coach. Paragraph 13 does not include this fact. Paragraph 11 includes the statement that Artis became the sole Assistant Men's Basketball Coach "[b]ased on his years of experience coaching and his performance with the team." Def. Ex. C, ¶ 11, ECF No. 26-3. However, the statement is not material to the instant motion. As set forth below, even if Artis' experience was the reason he was chosen to be the sole Assistant Men's Basketball Coach, the reason Artis was paid a salary of $10,000 was because he was the sole assistant coach and not because of his experience.

Finally, the Court grants the motion as to the first sentence of paragraph 14, which is a legal conclusion, and denies the motion as to the second sentence, which is a fact regarding the budgeting process and is within McGuire's personal knowledge. Accordingly, the Plaintiff's motion is granted in part, denied in part, and denied as moot in part.

**B.    The Defendant's Motion to Strike**

The Defendant's Motion to Strike Hearsay Testimony in Plaintiff's Exhibit A [ECF No. 33] asks the Court to strike paragraph 8 of Steve Helm's affidavit. Paragraph 8 provides: "Ashley Houlihan was an Assistant Women's Basketball Coach under the former coach; however, she had resigned prior [to] Affiant being hired as the Head Women's Basketball Coach." Pl. Ex. A, ¶ 8, ECF No. 30-1. The Defendant argues that this statement is inadmissible hearsay because

Helm cannot have personal knowledge of what occurred prior to his employment. Because this fact is not material to the ruling on the instant motion, the Court denies the motion as moot.

## MATERIAL FACTS

**A.     The Defendant's Athletic Coaching Structure and Compensation**

The Defendant Calumet College of St. Joseph, Inc. is a private, four-year Catholic institution of higher education. *See* Calumet Coll. of St. Joseph, https://www.ccsj.edu (last visited Jan. 20, 2022). The Defendant has several athletic programs, including Women's Basketball and Men's Basketball. Def. Ex. A, 25, ECF No. 26-1. The budgets and salaries of the athletic programs are reviewed annually in consultation with the Athletic Director to address program needs and budgetary concerns. Def. Ex. C, ¶ 14.

The "Job Description" for "Assistant Coach (Men's/Women's teams)" provides that the required "Education" is a "Bachelor degree in appropriate area of specialization" and "1–3 years' college coaching and recruiting experience or extensive high school coaching experience preferred." Def. Ex. A, 26. The "Certifications" requirement provides: "Currently holds proper coaching certifications or willing to acquire the certifications; CPR/First Aid/AED certified." *Id*. The "Experience" requirement provides: "Previous coaching experience in high school and/or higher education environment preferred." *Id*. The "Position Summary" states that "[t]he main responsibility of the assistant coach is to assist the head coach in recruiting student athletes, administering the sports program . . . [, and] assisting in retaining the student athlete for their full educational commitment." *Id.* An assistant coach is expected to spend at least 75% of the time in student coaching and teaching activities and the remaining time on recruitment and team travel activities. *Id*.

Head coaches could hire one or more assistant coaches, but the budgeted amount for assistant coaches remained the same. Def. Ex. C, ¶ 7. For example, for the 2016–2017 academic year, the Men's and Women's Cross Country/Track Team had four paid assistant coaches, whose salaries together totaled $10,000 ($6,000; $2,000; $1,000; $1,000). Def. Ex. A, 25. The Baseball Team had two assistant coaches, each paid $5,000, for a total of $10,000. *Id*. Other programs had more money allotted to head coaches, utilizing only one assistant coach. *Id*. For example, Women's Soccer, Men's Soccer, Women's Bowling, Men's Bowling, and Wrestling each had a head coach who was paid $18,000 and one assistant coach who was paid $5,000. *Id.* Men's and Women's Tennis and Women's Volleyball each had a head coach who was paid $15,000 and one assistant coach who was paid $5,000. *Id*. Competitive Dance had a head coach who was paid $10,000 and one assistant who was paid $10,000. *Id*.

The Women's and Men's Basketball Teams were each allotted a total budget of $10,000 for assistant coaches, to be utilized at the discretion of the head coach. Def. Ex. C, ¶ 7; Def. Ex. A, 25. For 2016–2017, the Men's Basketball Team had a head coach who was paid $18,000 and one assistant coach, Christopher Artis, who was paid $10,000. Def. Ex. A, 25.

In 2015, Steve Helm was hired as the Head Women's Basketball Coach. Pl. Ex. A, ¶ 1. As head coach, Helm was permitted to hire assistant basketball coaches to assist him. *Id*. at ¶ 2. Helm was advised that the budget for assistant coaches was $10,000. *Id*. at ¶ 3. For 2016–2017, the Women's Basketball Team had a head coach who was paid $10,000, and the written contracts show two assistant coaches—Ashley Houlihan and the Plaintiff, each with a salary of $5,000. Def. Ex. A, 4, 23; *see also id.* at 25.

5

**B.     Houlihan's Employment as Assistant Women's Basketball Coach**

Ashley Houlihan was hired for the 2009–2010 through 2013–2014 academic years and the 2015–2016 academic year as a "temporary, part-time, support staff position as Assistant Women's Basketball Coach," at a salary of $2,000 the first year and $4,000 each year after. Def. Ex. A, 17–22. The record does not contain a 2014–2015 contract for Houlihan.

Houlihan's 2016–2017 contract indicates that she is "continuing as our Assistant Women's Basketball Coach," at a salary of $5,000. *Id.* at 23. However, Coach Helm did not hire Houlihan as an assistant for the Women's Basketball Team. Pl. Ex. A, ¶ 9. Coach Helm states in his affidavit that Houlihan was never present at any practices or games and did not assist in recruiting, scouting, game preparation, or any other assistant coach duties. *Id.* at ¶ 10.

Houlihan's 2017–2018 contract states that she is a "part-time Assistant Coach, Softball" at a salary of $5,000. Def. Ex. A, 24. For the first time, the contract describes her duties:

> Your responsibility as an assistant coach at CCSJ is to assist the head coach in all activities related to your team and to assure our student athletes have a positive and enriching experience as both an athlete and a student. Main duties will include assisting with recruitment of student athletes, administering the sports program in accordance with the policies of Calumet College of St. Joseph, and assisting in retaining the student athlete for their full educational commitment.

*Id*.

**C.     The Plaintiff's Employment as Assistant Women's Basketball Coach**

Head Coach Helm hired the Plaintiff to be his assistant coach for the Women's Basketball Team. Pl. Ex. A, ¶ 4. Helm never hired any other assistant coaches. *Id*. at ¶ 5. Prior to the start of the 2016–2017 season, Helm asked that the Plaintiff be paid the full $10,000 budgeted for assistant coaches. *Id.* at ¶ 6. Helm states that, as an Assistant Women's Basketball Coach, the Plaintiff was responsible for recruiting and scouting; assisted with strength training,

6

conditioning, running practices, and game planning and strategy; attended all games and assisted with coaching during games; and had other duties and responsibilities. *Id.* at ¶ 7.

The Plaintiff's 2016–2017 contract provides that she is "our Assistant Coach for Women's Basketball," with a salary of $5,000. Def. Ex. A, 4. For the 2017–2018 and 2018–2019 academic years, the Plaintiff was hired as "our part-time Assistant Coach, Women's Basketball," with a salary of $10,000. *Id.* at 2, 3. Beginning in 2017–2018, the Plaintiff's contracts contain the same job description as Houlihan's 2017–2018 contract. *Id.*

When the Plaintiff was hired in 2016, she had more than 15 years of experience working as an elementary and secondary physical education teacher. Def. Ex. B, 2–3, ECF No. 26-2. From 2007 to 2014, she worked as a physical education teacher and the athletic director at the West Gary Lighthouse Charter School (elementary through high school), where she coached boys basketball, ran the middle school program, and selected coaches for all sports from elementary through high school. *Id.* at 3. In earlier jobs, she coached girls middle school basketball, girls high school basketball, and girls high school softball. *Id.* at 2–3.

D.  **Artis' Employment as Assistant Men's Basketball Coach**

Christopher Artis was an Assistant Men's Basketball Coach for the 2004–2005 through 2018–2019 academic years. Def. Ex. C, ¶¶ 10, 12. From 2004–2005 through 2012–2013, he was hired as a "temporary, part-time, support staff position as Assistant Men's Basketball Coach." Def. A, 9–16. His compensation was $4,000 for 2004–2005, 2006–2007, 2010–2011; $5,000 for 2007–2008, 2008–2009, 2009–2010; $3,333.30 for 2011–2012; and $6,000 for 2012–2013. *Id.*

Beginning in the 2015–2016 academic year, Artis was the sole Assistant Men's Basketball Coach, a decision made by the Head Men's Basketball Coach. Def. Ex. C, ¶ 13. For 2015–2016, 2016–2017, and 2018–2019, Artis' contracts provide that he was returning or

7

continuing "as our part-time Assistant Coach for Men's Basketball," with a salary of $10,000. Def. Ex. A, 6–8. The record does not contain any contracts for Artis for 2013–2014, 2014–2015, or 2017–2018.

## ANALYSIS

The Equal Pay Act prohibits discrimination in wages "between employees on the basis of sex" when those employees perform "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). A plaintiff bringing a claim under the EPA bears the initial burden of establishing a prima facie case of wage discrimination. *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018) (citing *Lauderdale v. Ill. Dep't of Human Servs.*, 876 F.3d 904, 907 (7th Cir. 2017)). If the plaintiff makes this showing, the burden of proof shifts to the defendant to prove a gender-neutral justification for the unequal pay. *Id*. (same).

**A.    The Plaintiff's Prima Facie Case**

To establish a prima facie case of wage discrimination, a plaintiff must show, "by a preponderance of the evidence, that '(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (quoting *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998)); *see also Terry*, 910 F.3d at 1008. Here, the Plaintiff has raised triable issues of fact on the prima facie case for the 2016–2017 academic year.

As an initial matter, there is a genuine dispute of material fact as to whether there were one or two Assistant Women's Basketball Coaches in 2016–2017. The Defendant argues that there were two, citing the 2016–2017 written contracts for Ashley Houlihan and the Plaintiff.

8

The contracts show that each was hired as an Assistant Women's Basketball Coach at a salary of $5,000. In contrast, the Plaintiff argues that she was the sole Assistant Women's Basketball Coach in 2016–2017, citing the affidavit of Steve Helm, the Head Women's Basketball Coach. At Calumet College, the decision to hire assistant coaches was made by the head coaches. Helm states in his affidavit that he hired the Plaintiff as his assistant coach and did not hire any other assistant coaches. Helm was advised that the budget allowed for assistant coach salaries was $10,000, and, prior to the 2016–2017 season, he asked that the Plaintiff be paid the full budgeted amount. Helm also describes the Plaintiff's duties, which included recruiting and scouting; assisting with strength training, conditioning, running practices, and game planning and strategy; and attending and assisting with coaching during all games. Helm states that he did not hire Houlihan as an Assistant Women's Basketball Coach and that Houlihan was never present at any practice or game and did not assist in recruiting, scouting, game preparation, or any other duty that assistant coaches perform. Thus, the Plaintiff has offered evidence that she was effectively the sole Assistant Women's Basketball Coach, creating a disputed material fact for trial.

When the facts are viewed in the light most favorable to her, the Plaintiff has satisfied the prima facie case. First, for the 2016–2017 season, the Plaintiff was paid $5,000 as the Assistant Women's Basketball Coach, while Artis, a male, was paid $10,000 as the Assistant Men's Basketball Coach. Second, both the Plaintiff and Artis were the sole assistant coach for their respective basketball teams. The job description for an assistant coach, which applies to both men's and women's teams, states that "[t]he main responsibility of the assistant coach is to assist the head coach in recruiting student athletes, administering the sports program . . . [, and] assisting in retaining the student athlete for their full educational commitment." Again, Coach Helm states that the Plaintiff, his only assistant coach, was responsible for recruiting and

scouting; assisted with strength training and conditioning, running practices, and game planning and strategy; attended all games and assisted with coaching during games; and had other duties and responsibilities. Thus, the Plaintiff and Artis performed equal work that required equal skill, effort, and responsibility. Third, both the Plaintiff and Artis were assistant basketball coaches at Calumet College and had similar working conditions.

The Defendant argues that the Plaintiff's role as the Assistant Women's Basketball Coach did not require "equal skill, effort, and responsibility" as Artis' role as the Assistant Men's Basketball Coach. The Defendant's only reasoning is that Artis was a significantly more experienced college basketball coach who, based on that experience, "was assigned to handle responsibilities delegated to two assistant women's basketball coaches." Def. Br. 9, ECF No. 26. However, as set forth above, the evidence of record shows that only the Plaintiff handled the responsibilities of the Assistant Women's Basketball Coach as Houlihan performed no such functions. Moreover, Artis' prior experience as an assistant college basketball coach at Calumet College may go to his qualifications to perform the job or why he was selected by the Men's Head Coach as the sole assistant coach in 2015, but his years of experience do not define the "skill, effort, and responsibility" required of the job.[1]

**B.     The Defendant's Defense**

Because the Plaintiff has carried her burden of establishing a prima facie case of wage discrimination, the burden shifts to the Defendant to establish that the difference in pay was the result of any one of four statutory exceptions: "(i) a seniority system; (ii) a merit system; (iii) a

---

[1] Although Artis had more years of experience as a college basketball coach, the Plaintiff had significant experience in the secondary school setting with teaching physical education, coaching basketball as well as softball, and working as an athletic director in a charter school. Notably, the assistant coach job description provides that "1–3 years college coaching and recruiting experience" or "extensive high school coaching experience" is "preferred" and that "previous coaching experience in high school and/or higher education environment preferred."

system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Terry*, 910 F.3d at 1008 (quoting *Lauderdale*, 876 F.3d at 907 (quoting 29 U.S.C. § 206(d)(1))). The stated justification must "be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith." *Warren*, 516 F.3d at 630 (quoting *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989)). A defendant asserting this affirmative defense bears the burden of both production and persuasion. *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012). The Defendant has not carried its burden on this motion.

      The Defendant argues that Artis' years of experience as an assistant college basketball coach is a gender-neutral basis for the pay disparity, essentially asking the Court to infer that Artis' experience is the reason his salary was $10,000. However, the reasonable inference from the evidence of record is that Artis was paid $10,000 in 2016–2017 because he was the only Assistant Men's Basketball Coach. Men's and Women's Basketball were each allotted $10,000 for assistant coach salaries. In 2016–2017, the Plaintiff and Houlihan were each paid $5,000 as Assistant Women's Basketball Coaches (even though Houlihan performed no work in that role). The following year, when the Plaintiff was the only Assistant Women's Basketball Coach under contract, her salary increased to $10,000. Similarly, before Artis became the sole Assistant Men's Basketball Coach in 2015–2016, he was paid salaries ranging from $3,333.30 to $6,000. In fact, the Defendant offers evidence of several other sports that spent the $10,000 assistant coach salary on either one assistant coach or divided the salary among more than one assistant coach. The Defendant offers no evidence that assistant coach salaries were determined by anything other than the $10,000 salary limit divided by the number of assistant coaches hired for that sport. Although some sports did not allot salaries evenly among multiple assistant coaches

(e.g., salaries of $6,000, $2,000, $1,000, and $1,000 for Men's and Women's Cross Country/Track Team in 2016–2017), the Defendant offers no evidence that seniority or years of experience were a factor in determining the salaries.

The Defendant also attempts to characterize this system of assistant coach salaries as a "historical" practice and, thus, gender neutral. *See, e.g., Terry*, 910 F.3d at 1010 (holding that the differences in pay were "historical" based on a salary freeze, which was a gender-neutral basis for the disparity in pay). However, that practice does not explain why the Plaintiff and Artis, each the sole assistant coach for their respective teams in 2016–2017, were paid different salaries despite each team being allotted $10,000 for assistant coach salaries. The Defendant has not demonstrated a gender-neutral basis for the pay disparity.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS in part, DENIES in part, and DENIES as moot in part the Motion to Strike Defendant's Exhibit C [ECF No. 29], DENIES as moot the Motion to Strike Hearsay Testimony in Plaintiff's Exhibit A [ECF No. 33], and DENIES Calumet College of St. Joseph's Motion for Summary Judgment [ECF No. 25]. Because there are genuine disputes of fact for trial, the Court also DENIES the Plaintiff's request made in Part II.E of her response brief for the Court to enter summary judgment in her favor. The Court will set this matter for a telephonic scheduling conference by separate order.

SO ORDERED on January 21, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT